**23** THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL RIVERA BAEZ, Appellant. — Appeals by defendant from (1) a judgment of the Supreme Court, Kings County (Canudo, J.), rendered June 24, 1977, convicting him of criminal sale of a controlled substance in the second degree, upon a jury verdict, and imposing sentence, and (2) an order of the same court, dated March 21, 1980, denying his motion for resentencing pursuant to section 60.09 of the Penal Law. ¶ Appeal from the order dismissed. No appeal lies from an order denying resentencing (see *People v De Jesus,* 54 NY2d 447). Counsel's application for leave to withdraw as counsel with respect to that appeal is granted (see *Anders v California,* 386 US 738; *People v Paige,* 54 AD2d 631; cf. *People v Gonzalez,* 47 NY2d 606). ¶ Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. ¶ Defendant stands convicted of having sold one ounce of heroin to an undercover detective on February 23, 1976. At the *Wade* hearing, the undercover detective testified that a confidential informant introduced defendant to him as "Billie", and that the informant remained during the transaction, but the People failed to produce the informant. Despite defense counsel's repeated requests that the identity of the informant be disclosed, the trial court refused to compel disclosure. Defendant, who had never previously been convicted of a crime, took the stand at trial and denied that he was the person who had sold heroin to the detective; indeed, he denied ever having seen the detective before trial. Moreover, he said no one ever called him "Billie". ¶ On appeal, defendant argues that the trial court's refusal to compel disclosure of the informant's identity deprived him of a fair trial. We agree and reverse the judgment of the conviction. ¶ In determining whether an informant's identity should be disclosed, "the truly crucial factor in every case is the relevance of the informer's testimony to the guilt or innocence of the accused" (*People v Goggins,* 34 NY2d 163, 170, cert den 419 US 1012). The issue in this case was one of identification and the question of guilt essentially hinged on whether the detective was correct in identifying defendant as the man who sold him the heroin. The fact that the resolution of this issue turned on the respective credibility of the

detective and defendant did not, in and of itself, mandate disclosure. Indeed, defendant's uncorroborated alibi that he was playing baseball nearby at the time in question was rather weak, and the weakness of this alibi would ordinarily militate against compelling disclosure of the informant's identity (see *People v Pena,* 37 NY2d 642, 646-648). However, disclosure here is required as a result of a suggestive postarrest identification procedure which, although not requiring suppression of the in-court identification, raises a serious question as to the accuracy of the detective's identification. ¶ At the *Wade* hearing, it was ascertained that two months after the heroin sale, the undercover detective was brought by another police officer to view defendant. The detective was shown a photograph of defendant and was told that defendant had been arrested on another drug sale charge and that charges would also be brought in connection with the transaction involved in this case. Thereafter the detective was taken to a space behind a correction officer's locker room, viewed defendant through a crack between the lockers, and identified him. It is clear that that showup procedure does not warrant suppression of the detective's in-court identification as an independent basis for identifying defendant existed: the detective had defendant under observation at the time of sale for 11 to 12 minutes under good lighting conditions, and moreover, was a trained observer who could be expected to make careful observations (see *People v Morales,* 37 NY2d 262, 271). Nevertheless, the suggestiveness of the later showup cast sufficient doubt on the identification so as to make absolute the "relevance of the informer's testimony to the guilt or innocence of the accused" (*People v Goggins, supra,* p 170). Unlike the situations in *People v Martinez* (79 AD2d 661, affd 54 NY2d 723) and *People v Colon* (39 NY2d 872), here the informant was an eyewitness to the sale, a fact which makes out "the strongest case for disclosure" (*People v Goggins, supra,* p 169). Moreover, unlike the situation in *People v Lloyd* (43 NY2d 686, affg 55 AD2d 171, 172), where two police officers unequivocally identified the defendant in whose presence they had been for close to an hour, here only the informant could resolve the issue as to whether defendant was, in fact, the person who sold the detective the heroin. Mindful of the vagaries of identification testimony (see *United States v Wade,* 388 US 218, 228-229), we conclude that the doubt cast upon the identification testimony mandates disclosure of the identity of the only person who could corroborate or contradict it. ¶ Were we not reversing defendant's conviction on the foregoing ground, we would reverse nonetheless, since several trial errors considered in the aggregate independently deprived him of his due process right to a fair trial. ¶ First of all, a member of the undercover detective's backup team was allowed to testify that, in connection with his investigation of illicit drug activity he "sometimes * * * leave[s] the country". He further discussed various methods of electronic and photographic surveillance, none of which were used in this case. He claimed that the undercover detective did not wear a recording device when he consummated the instant sale because "it could jeopardize his life". Likewise, the undercover detective testified that one of his duties was to investigate "[d]rug trafficking organizations". ¶ Despite the implication to the contrary by the prosecutor's development of the afore stated testimony, there was no evidence at bar that defendant was a participant in any international drug conspiracy. This court has condemned the introduction of so-called background material which lacks both relevance and probative value and is brought in to imply to the jury that the defendant is guilty of uncharged crimes or is a "big time" drug dealer (see *People v Turner,* 66 AD2d 904; *People v Philpot,* 50 AD2d 822). This was certainly not a case where "the jury would wander helpless, as in a maze, were the decisive occurrences not placed in some broader, expository context" (*People v Green,* 35 NY2d 437, 441-442). Although

all of the prejudicial testimony offered in the instant case was not objected to, a Trial Judge should not stand mute when irrelevant and prejudicial testimony is offered which threatens a defendant's right to a fair trial, nor can we, as Appellate Judges, stand mute when, upon reviewing the record, we find that testimony which was not objected to deprived the defendant of his due process rights. ¶ We further note that a laboratory report of the analysis of the heroin purchased by the detective was admitted into evidence. Apparently, the report contained a statement that the detective purchased the heroin from defendant. Defense counsel moved to redact the statement. The trial court denied the motion and instead instructed the jury that the statement in the report was not being admitted for the truth of its contents but "for the purpose of establishing the source from which the chemist obtained the substance". The confusing and dangerous nature of this instruction is quite obvious and does not require further comment. The better course would clearly have been to simply redact the statement. ¶ Finally, we note that the trial court's instruction on identification was very sparse, consisting of a direction to "consider [a] witness' means of knowledge or observation as to the facts" in assessing his or her testimony. The main issue in this case was identification, and the better course at the new trial will be to give the expanded charge approved by this court in *People v Daniels* (88 AD2d 392; see, also, *People v Whalen,* 59 NY2d 273). Gibbons, O'Connor and Rubin, JJ., concur.

Titone, J. P., concurs insofar as he votes to dismiss the appeal from the order but otherwise dissents and votes to affirm the judgment of conviction, with the following memorandum: In my view, the trial court correctly found that the confidentiality of the informant should be maintained (see *People v Pena,* 37 NY2d 642, 644). The People's proof on the issue of identity was exceptionally strong. The undercover officer's trial identification was based upon an 11- to 12-minute observation of the defendant during which time the two were in close proximity to each other. ¶ Indeed, for most of the time the two stood face-to-face. Moreover, since the transaction took place in broad daylight in the middle of the afternoon, the observations were made under excellent lighting conditions. In addition, defendant was hardly a stranger; he was the target of the investigation. ¶ When defendant was arrested two months later, the undercover officer confirmed that he was the same person who had sold him heroin. Since the officer was trained to make an accurate identification, this showup procedure, "far from being improper, [was] actually 'consistent with good police work' " (*People v Morales,* 37 NY2d 262, 272, quoting from *United States ex rel. Cummings v Zelker,* 455 F2d 714, 716, cert den 406 US 927; see, also, *People v Martinez,* 79 AD2d 661, affd 54 NY2d 723). ¶ In stark contrast to the People's evidence, defendant's purported alibi was weak and incredible on its face. Defendant claimed that he was playing baseball around Union Street on the date of the sale. Since the sale took place in February, this claim, to say the least, taxes credulity almost to the breaking point. Further, defendant produced none of the other "players" to support the alibi. ¶ Production of an informant is not warranted simply because the defendant presents some far-fetched story (*People v Pena, supra; People v Martinez, supra; People v Lloyd,* 55 AD2d 171, affd 43 NY2d 686). In *Lloyd,* the sale similarly occurred in the presence of informants and the defendant took the stand and asserted an alibi. Because that alibi, "viewed objectively, was most unconvincing" and because the identification was strong, denial of disclosure was upheld (*People v Lloyd, supra,* p 174). *Lloyd* should control here. *People v Goggins* (34 NY2d 163, cert den 419 US 1012), relied upon by the majority, is plainly distinguishable. Goggins' alibi was supported by credible witnesses, the transaction took place at night, and the undercover officer had a poor opportunity to observe the individual with whom he was dealing. In short, the alibi defense herein was

insufficient to cast a "significant doubt on the police testimony" and, therefore, "there was no error in the exercise of discretion by the trial court in protecting the identity of the informant, and thus his continued usefulness, and perhaps his safety" (*People v Colon,* 39 NY2d 872, 873). ¶ Finally, I would note that the majority of the trial errors were not objected to and neither individually nor collectively denied the defendant a fair trial (see *People v Hopkins,* 58 NY2d 1079, 1083; *People v Cook,* 42 NY2d 204; *People v Lowen,* 100 AD2d 518). Review in the interest of justice is most unwarranted. ¶ The judgment should be affirmed.